Planting and Manufacturing Company vs. Tax Collector et als.

## No. 9915.

### EXCELSIOR PLANTING AND MANUFACTURING COMPANY VS. T. K. GREEN, TAX COLLECTOR, ET ALS.

Act No. 44 of 1886 does not violate Art. 29 of the Constitution, that "Every law shall embrace but one object, which shall be expressed in the title." The act embraces but one broad and comprehensive object, and its various provisions embrace means for its accomplishment, appropriate and referrable to the object, and all of which are expressed in the title.

The act does not violate Art. 48 of the Constitution, prohibiting local or special laws, without previous published notice having been given of the intention to apply for them. This law is removed from the operation of Art. 48 by Arts. 213 and 214 of the Constitution, the first of which provides that "a levee system shall be maintained in the State," and the other authorizes the establishment of levee districts, etc. The power granted by Art. 213 is ancillary to the duty imposed by Art. 214. The power and duty so expressly conferred by these articles passed to the Legislature untrammelled by the restrictions of Art. 48, affirming 33 Ann. 568; 35 Ann. 492; 35 Ann. 1142.

The power conferred by Art. 214 of the Constitution to levy a tax of five mills on all the property of the district, was not exclusive of the power of local assessments for the same purpose. The intention was to grant a new and additional power, which, but for such express grant, would have been prohibited by other articles of the Constitution, not to destroy powers already possessed.

Arts. 35, 43, 53 and 55 of the Constitution have no application, because this is not an *appropriation* or a *revenue* bill within the meaning of those articles.

Arts. 44 and 56 do not apply, because this act does not "contract or authorize the contracting of any debt or liability on behalf of the State;" and the bonds authorized are for the benefit of the levee district corporation itself, and not for any other person or corporation, as intended by Art. 56.

The assessments levied by the act are not violative of Arts. 203, 209, 214 and 242, on the subject of taxation, affirming, after discussion, former decisions, holding that "local assessments for public works, levied, not on taxable property generally for common public benefit, but only on particular property specially benefited by the works as an equivalent for the direct benefit conferred, although an exercise of the taxing power, are not considered as taxes within the scope and meaning of constitutional restrictions on the general power of taxation."

Although the legislative power to levy local assessments is thus recognized, yet it does not follow that every exaction may be supported by simply calling it a local assessment. Three elements must concur to make a valid local assessment: 1st. The work must be public, and of a character to confer special benefit on the district assessed, as distinct from the general benefit to the State at large. 2d. The assessment must be supported by benefits, actually or presumptively received by the persons or property subjected to it. 3d. The contribution must not manifestly exceed the benefit conferred.

Any pretended assessment wanting in these elements would cease to be taxation, and become a taking of property without process of law and without adequate compensation.

When, however, the Legislature, in the exercise of legislative power, has levied local assessments which are not clearly wanting in the foregoing elements, it is not the province of the judiciary to annul and set them aside.

Local assessments are, as a general rule, levied on land alone; but this is only because land is the kind of property which is usually benefited; but there exists no such constitutional or other restriction on the legislative power; and when particular personal

| | |
|---|---|
| 39 | 455 |
| 45 | 1235 |
| 39 | 455 |
| 46 | 1302 |
| 46 | 1566 |
| 39 | 455 |
| 49 | 434 |
| 49 | 1771 |
| 39 | 455 |
| 51 | 808 |
| 51 | 1353 |
| 51 | 1919 |
| 51 | 1920 |
| 39 | 455 |
| 104 | 292 |
| 39 | 455 |
| 112 | 905 |
| 39 | 455 |
| 115 | 661 |
| 39 | 455 |
| 124 | 639 |

property has enjoyed a benefit from the works to which it owes its existence and preservation, nothing prevents the Legislature from assessing it.

Under this act the cotton is assessed, not simply as a bale of cotton, but as a bale of cotton which has been produced on lands protected by the levees, and has, during the period of . its cultivation and growth, enjoyed the benefit of its protection. No one dealing with such cotton can be prejudiced, because all are advised by the law, from the moment when the cotton is planted, that, when it reaches the condition of a ginned bale, it must pay this tax.

The provisions of the fourteenth amendment to the Constitution of the United States and of Arts. 6 and 156 of the State Constitution on the subject of taxing property, without due process of law, or without adequate compensation previously made, do not apply to local assessments, but only to exactions made under the right of eminent domain.

We have no jurisdiction over the reconventional demand.

APPEAL from the Ninth District Court, Parish of Concordia. Young, J.

*Elam & Luce, Conner & Conner*, and *F. L. Mason* for Plaintiff and Appellant.

*Steele, Garret & Dagg* and *Kennard, Howe & Prentiss*, for Defendants and Appellees.

The opinion of the Court was delivered by

FENNER, J.   The objects of this action are to enjoin the execution of the provisions of the act of the General Assembly, No. 44 of 1886, and to have said act decreed to be unconstitutional, null and void.

The general objects of the act referred to are to establish a levee District composed of certain territory therein defined; to create for said district a body corporate styled " The Board of Commissioners for the Fifth Louisiana Levee District;" and to vest said board with various powers and duties therein enumerated, having in view the principal purposes of "the construction and maintenance of levees, and to establish a comprehensive levee system     *     *     *     for the purpose of permanently securing the entire district from destructive floods," and of providing the necessary revenues for carrying out said objects.

The constitutional objections urged are numerous, and we shall consider them separately.

I.

It is claimed that the title of the act does not comply with the requirements of Art. 29 of the Constitution which provides that " every law shall embrace but one object and that shall be expressed in its title." The title is very long and very specific and certainly expresses and covers every provision embraced in the law. Indeed

the complaint is, not that the title fails to express the object of the law, but that the law itself embraces more than one object. Hence the decisions relied on by plaintiff's counsel in the Irwin case, 33 Ann. 63, and State vs. Baum, 33 Ann. 982, have no application. In those cases we were concerned exclusively with the sufficiency of the titles; and finding that the laws contained provisions of a character not expressed or suggested in the titles, we decreed their nullity. Language used to distinguish the provisions expressed, from those not expressed, in the title, as being "distinct and separate," is not to be interpreted as meaning that they were so separate and distinct that they could not have been embraced in the same law if they had been properly expressed in its title.

We have, heretofore, held that a law is not invalidated because it contains "several particular objects, all of which are properly referable to, and subdivisions of, a single general object." State vs. Henderson, 32 Ann. 781; Weise vs. Thibaut, 34 Ann. 556. (Reported by syllabus only; see opinion.)

Cooley lays down the proper principle governing the application of this constitutional requirement: "The general purpose of such provisions is accomplished when the law has but one general object which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of the general object, to be provided for by a separate act relating to that alone, would not only be unreasonable but would actually render legislation impossible." Cooley Const. Lim., p. 143.

The proper application of the foregoing principles renders the objections to statute under this head so untenable and futile that we really feel it unnecessary to particularize them The law has one broad and comprehensive object fully expressed in its title, and its various provisions only embrace means for its accomplishment, appropriate and referable to the object itself. Under plaintiff's theory the Legislature, to effectuate this object, would have been obliged to pass a dozen separate acts, each of which, standing alone, would have been meaningless.

## II.

The next objection urged is that the act violates Art. 48 of the Constitution which provides that "no local or special law shall be passed on any subject not enumerated in Art. 46, unless notice of the intention to apply therefor shall have been published, etc., at least thirty days prior to the introduction into the General Assembly of such bill."

Waiving the question as to whether this is a local or special law, it is removed from the operation of Art. 48 by Arts. 213 and 214, the first of which provides that " a levee system shall be maintained in the State," and the last declares " the General Assembly may divide the State into levee districts, and provide for the appointment or election of levee commissioners in said districts, who shall, in the method and manner to be provided by law, have a supervision of the erection, repairs and maintenance of the levees in said districts; to that effect it may levy a tax, not to exceed five mills, on the taxable property situated within the alluvial portions of said districts subject to overflow."

The power thus expressly conferred by Art, 214 is ancillary to the duty imposed by the previous Art. 213, and it passed to the Legislature untrammelled by the restrictions contained in Art. 48.

The Constitution imposed upon the General Assembly the *duty* to maintain " a levee system," and, as an aid in the furtherance of such duty, it conferred the *power* to establish " levee districts."

We are bound to presume that, in passing this statute, the General Assembly has concluded that, for the efficient performance of its duty to maintain a " levee system," it was essential to exercise this power of establishing a " levee district."

We have held in three cases that where the Constitution has, in express terms, conferred on the General Assembly the duty, or even the power, to adopt legislation on a particular subject, even though local in character, such duty and power are not subject to the restrictions imposed by Art. 48. Taxpayers vs. City, 33 Ann. 568; Davidson vs. Houston, 35 Ann. 492; State vs. Dalon, 35 Ann. 1142.

We can add nothing to the reasoning presented in those cases, and content ourselves with referring to them.

### III.

It is claimed, however, that the act violates Art. 214 itself, which has just been quoted, because the last clause thereof authorizing the levy of a " tax, not to exceed five mills, on the taxable property situated within the alluvial portion of said districts subject to over-flow," is a provision of the means for the exercise of the prior power granted, which is restrictive and impliedly prohibitive of a resort to any other means, and that this prohibition is violated because the act, after authorizing the levy of the five mill tax, proceeds to authorize the collection of certain local contributions or assessments on particular property benefited by the levees.

We consider the reasoning of plaintiff's counsel on this subject

entirely fallacious. They assimilate this provision to the clause of the Constitution authorizing the General Assembly "to exempt from taxation property actually used for church, school or charitable purposes," and to another clause fixing the salary of the judges of this Court at $5000 *per annum*. It has been held that no other property than that enumerated can be exempt from taxation; and we should, of course, hold that no greater salary than $5000 could be conferred upon the judges. We carry the analogy to its fullest extent when we say that, under Art. 214, the power granted to levy the five mill tax would be exclusive and prohibitive of any levying of any greater tax; but the analogy entirely fails when the effort is made to extend the prohibition to the provision of other means than taxes. It is obvious that the object of the last clause of Art. 214 was not to exclude the power of local assessment, but simply to confer the power of taxation. It was necessary for the latter purpose, because, without it, such power could not have been exercised, being in violation of other constitutional provisions on the subject of taxation. But the power of local assessment (if it exists at all, which will be considered hereafter) existed entirely independent of this and all other provisions on the subject of taxation. To hold that the power of local assessment was taken away, because the power of taxation was conferred, would be to reverse the purpose of the article, and to convert what was evidently intended as the grant of a new and additional power into a destruction of power already possessed.

No sound rule of interpretation supports such a construction and we sustain the legislative interpretation which has rejected it.

IV.

The objections that the act violates Arts. 35, 53, 55, 43, 44 and 56, may be disposed of *in globo*.

As to the first four articles, they have no application, because it is evident that this is not an appropriation or revenue bill within the meaning of those articles.

As to Arts. 44 and 56, they are equally inapplicable, because the act does not " contract, or authorize the contracting of, any debt or liability on behalf of the State;" and it does not loan, pledge or grant the funds, or credit, or property of the State, or of any political corporation thereof " to or for any person or persons, association or corporation, public or private." The bonds authorized to be issued by the corporation are issued for its own exclusive purposes and benefit.

As to the grant to the corporation of certain lands of the State, we

need not now discuss its constitutionality, because it does not affect
the issues in this case, and even if that part of Section 11 were uncon-
stitutional (which we do not decide) the rest of the act might well
stand without it. The same remarks apply to the exemption of said
granted lands from taxation.

V.

Section 9 of the Act authorizes the board to "levy, annually, a local
assessment or forced contribution of five cents on each and every acre
of land within the district;" and Section 10 provides: "that in case
the said board shall deem the funds heretofore provided for, inade-
quate to locate, repair and construct levees so as to prevent disastrous
floods, the said board shall have authority to levy a special assessment
or forced contribution, not to exceed fifty cents per bale on each and
every bale of cotton produced in the district upon lands subject to
taxation under the provisions of this Act."

The contributions levied under the foregoing provisions are the main
subjects of controversy. They are assailed as violative of Articles 203,
209, 214 and 242 of the State Constitution.

It is not necessary to quote these articles. It is sufficient to say that
they all contain certain directions, regulations and limitations which
the framers of the organic law have ordained as controlling the exer-
cise of the power of taxation by the State and its subordinate political
corporations.

It is self-evident, that if the contributions here involved are em-
braced within the scope and meaning of the words "taxes," and "tax-
ation," as employed in those articles, they would unquestionably
violate both their letter and spirit.

But in a recent case, very analogous to the instant one, we have
held, after the most careful consideration, that "local assessments for
public works, levied, not on taxable property generally for mere
common public benefit, but only on particular property specially ben-
efited by the works, as an equivalent for the direct benefit conferred,
are not considered as taxes within the meaning of constitutional re-
strictions on the power of taxation." Charnock vs. Levee Dist. Co.,
38 Ann. 323.

In so holding, we followed a long line of precedents in the juris-
prudence of this and of other States, approved by the standard text
writers. 11 Mart. 324, 9 Rob. 333; 2 Ann. 330; 4 Ann. 2; 11 Ann. 220,
370; 14 Ann. 998; 20 Ann. 499; 21 Ann. 51; 32 Ann. 888; 33 Ann. 276;
34 Ann. 362; 36 Ann. 670, 38; Burroughs on Taxation, Chap. 22;

Cooley on Taxation, Chap. 20; and numerous authorities from other States cited by those authors.

We have considered attentively the respectful but vigorous assault made on the correctness of our opinion holding that this principle is applicable under the peculiar provisions of the present Constitution.

Our minds have been open to conviction, and, to paraphrase the nervous language of Chief Justice Black, if satisfied we had stumbled, we should, by no means, feel compelled to stumble again every time we came to the place where we stumbled before.

But on the most careful reconsideration of the question under all the additional light thrown upon it by the arguments of counsel and by their researches into the proceedings of the Convention, as recorded in its journal, we remain fully convinced of the correctness of our former decision.

The journal of its proceedings shows that the Convention absolutely refused to embody in the Constitution any regulation whatever of the power of local assessment; and amongst the propositions offered and rejected, was the following:

"Art. —. No specific tax or assessment for local improvements shall be levied or collected if the tax or assessment shall exceed the amout of the benefit conferred on the property." Official Journal, Conv. of 1879, pp. 201, 209, 261, 325

It is impossible to resist the inference that the Convention, having the subject of local assessments repeatedly brought before it, knowing that, under uniform jurisprudence, that subject was held not within the grasp of general provisions on the subject of taxation, and thus refusing to adopt any regulations whatever concerning it, determined to leave that power, where it had always rested, in the hands of the Legislature, to be exercised according to its discretion, limited only by other constitutional principles.

This is the conclusion reached by us in the Charnock case and we are bound to adhere to it.

## VI.

We are next to consider whether, admitting the legislative power to levy local assessments, the particular contributions exacted under this act are local assessments properly so called; for, as Judge Cooley wisely says, "a man's property is not to be taken from him with impunity, and without redress, by simply calling the appropriation an assessment, when it is not such in its elements." Cooley on Taxation, p. 460. We must understand what are the principles underlying this

and supporting this peculiar species of taxation, which is thus enfran-chised from the constitutional restraints imposed upon the ordinary exercise of the taxing power.

We consider Cooley's definition of these principles to be clear and correct, viz : "Special assessments are made upon the assumption that a portion of the community is to be specially and peculiarly benefited in the enhancement of the value of the property peculiarly situated as regards a contemplated expenditure of public finds; and, in addi-tion to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it." Cooley Taxation, p. 416.

Three elements must concur, viz :

1st. The work must be public and of a character to confer special local benefits on the district within which the assessment is levied.

2d. The assessment must be supported by benefits actually or presumptively received by the persons or property subjected to it.

3d. The contribution must not manifestly exceed the benefit con-ferred.

Where these elements or any of them are clearly wanting in con-tribution exacted under the name of a local or special assessment, the legislative action cannot be sustained. But the province of deter-mining for what objects, in what districts, and on what persons or property, such assessments may be levied, is wisely and, indeed, necessarily confided to the legislative department, and it is only where the assessment is so manifestly unjust, oppressive and violative of the foregoing requirements as to give demonstration that they have been disregarded, that a court would be justified in overruling the legisla-tive judgment. Indeed, Cooley says: "It is conceded that the legislative judgment that a certain district is or will be so far specially benefited by an improvement as to justify a special assessment is conclusive, and that its determination as to what shall be the basis of the assessment is equally conclusive. To invoke the intervention of a court for relief against the results of its conclusion is to give its judgment controlling effect over that of the Legislature, in a matter of the apportionment of a tax, which, by concession on all sides, is purely a matter of legislation. This is confessedly inadmissible in any case where the legislative power has not been exceeded by an apportionment merely colorable." Cooley Taxation, p. 459.

Applying these principles to the instant case, there can be no ques-tion that the object for which the assessments are levied, viz: The

building of levees, is a public and proper one, and that the property within the district will be undoubtedly benefited.

It has been held by this court, and is unquestionably true, that the main object of the public levee system in Louisiana is to protect arable lands from overflow and thus to enable crops to be produced upon them. Cash vs. Whitman, 13 Ann. 401, 38 Ann.

It is equally evident that such open and arable lands, by reason of the ability thus secured to make crops, derive greater benefit from levee protection than uncleared or uncultivated lands. It would have been competent, and clearly just, for the legislature to have imposed a greater contribution on the former than on the latter.

So, considering that the fairest measure of the additional benefit derived by the cultivated lands would be the crops actually produced, that would likewise form the safest guide in apportioning the additional contribution.

Nor do we see any reason why the crops themselves, thus protected and saved might not be subjected to assessment.

Now, it is a fact of which we may take judicial cognizance, that the principal agricultural product of the region comprised within the levee district is cotton, to which all other crops are subsidiary, and which is, as a general thing, the marketable and money-producing crop.

The Legislature, doubtless, concluded that the cotton produced on land would be as reasonable and fair a measure of the extra benefit derived by such land as any other, and that this cotton, having been protected during the whole season of its growth by the levees, had enjoyed a benefit which formed a just basis for its assessment. In this the Legislature certainly acted within the range of its power and in thorough conformity with the principles of special assssessment. The only question was how and when to apportion and collect the assessment on such cotton. The simplest and most practical method was evidently that adopted, to-wit: to apportion it on the ginned bale, which is the mercantile form to which all cotton is reduced for marketable purposes.

We can see no objection to this method.

The contention that this is a simple tax upon an article of personal property. which, at the moment it is taxed, has reached a condition in which it cannot possibly be benefited by levees, is entirely too narrow. The basis of the tax is not merely that the thing is a bale of cotton, but that it is a bale of cotton which has been produced on land

protected by the levees, and has, during the period of its cultivation and growth, enjoyed the benefits of such protection.

Every person who plants, cultivates, gathers or deals with this cotton, from first to last, knows, from this law, that when it passes to the stage of being ginned and baled, it is to pay the specified assessment as an equivalent for the protection it enjoyed during the period of its growth.

Thus the tax, in effect, attaches to the crop from the moment of planting the cotton and adheres until paid.

It is vain to say that a bale of cotton is personal property, and that local assessments can only be levied on real estate. There exists no such constitutional or other restriction on the legislative power. It is true, as Mr. Burroughs says, that "as a general rule, the local assessment is solely upon land, and not on personal property." Burroughs on Tax'n, p. 473.

But this is because, ordinarily, land is the kind of property which receives the benefit of such public improvements by increase of value.

Cooley says: "Personal property is not commonly thus assessed. The reason is manifest in the fact that special benefits generally accrue almost exclusively to lands." He refers to many cases, however, in which the assessment does embrace personal property as well as land. Cooley, Tax'n, p. 457.

When, as in the instant case, the particular personal property assessed has enjoyed a benefit from the works, to which it owes its existence and preservation, and when the Legislature has, in the exercise of its judgment, determined that it should contribute for such benefit, no principle or precedent can be found which would justify a court in overruling its decision.

### VII.

The provisions of the 15th amendment to the Federal Constitution, and of articles 6 and 156 of the State Constitution prohibiting the taking of property "without due process of law" and the taking of private property "for public purposes without just and adequate compensation being first paid," have no application to contributions levied under the taxing power, but only to exactions made in the exercise of the right of eminent domain.

Cooley says: "that local assessments are an exercise of the taxing power, has over and over again been affirmed until the controversy must be regarded as closed;" quoting a large number of authorities. Cooley on Tax'n. 430.

Planting and Manufacturing Company vs. Tax Collector et als.

We so held in the Charnock case, 38 Ann. 323.

It is well settled that the foregoing constitutional provisions have no application to local assessments possessing the elements essential to their validity, such as we have held these to be. If they were wanting in these elements, the case would be different; they would then "cease to be taxation and become a taking of private property for public use without just compensation." Burroughs on Tax'n., p. 467.

We have thus disposed of all the constitutional objections to the law. In reaching our conclusions we have been guided by the following cardinal principles which, though elementary, cannot be too often repeated as fixing the proper relations between the judicial and legislative departments of the government:

1st. That the legislative department of the State possesses complete and sovereign legislative power except so far as restrained by limitations imposed thereon by the Constitutions of the State and of the United States.

2d. That whoever assails the validity of a legislative act passed in the exercise of legislative power, must point to the portions of the State or Federal Constitutions which, expressly or impliedly, prohibit the adoption of such an act.

3d. That the judiciary, recognizing the right and duty of the Legislature to construe and determine primarily its own power under the Constitution, will never overrule that determination unless clearly convinced of such radical inconsistency between the law and Constitution that the two cannot be reconciled.

The presages of dire woes to result from the recognition of such power in the legislative department, are not, in our opinion, foreshadowed by the prudent and equitable exactions imposed by the present law, which, we trust, will be abundantly repaid by the benefits received. We have, however, indicated, in the present opinion, conservative principles which control and restrain the power and would afford protection in the improbable contingency that the Legislature should violate the trust that the people have reposed in its wisdom and patriotism.

The learned judge *a quo*, in a forcible opinion, reached the same conclusions which we have announced, on every point except the validity of the assessment on cotton.

We are clearly without jurisdiction of the reconventional demand. It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by annulling that portion thereof which partially maintains the injunction, and by now decreeing that the injunction sued out herein be dissolved and plaintiff's demand be rejected, plaintiff to pay costs of the lower court as of this appeal.