BRUNOT, Justice.
 

 This is an appeal, by the relator, from a judgment rendered in favor of the respondent and against the relator, discharging the rule nisi issued in the case, denying the writ of injunction prayed for in the petition, and rejecting the relator’s demands.
 

 It is admitted that the facts are correctly stated in relator’s brief, from whieh we quote the following:
 

 “By the provisions of Act No. 166 of the Regular Session of 1934, approved July 13, 1934, the Charity Hospital of Louisiana at New Orleans, * * * was recognized and declared to be a body corporate. The Act authorized the Board of Administrators of the Charity Hospital to demolish certain of the present unsuitable buildings and to erect new ones in their place; to borrow money and issue bonds in an amount not exceeding eight million dollars ($8,000,000) for the aforesaid purposes; to pledge the fees, fines, penalties, charges, etc., already provided for by law; and, in addition, to pledge the funds dedicated to the use of the Hospital by the provisions of Act No. 8 of the Regular Session of 1932, as amended by Act No. 18 of the Regular Session of 1934, Act No. 25 of the First Extraordinary Session of 1934, p. 82, § 11; Act No. 20 of the Third Extraordinary Session of 19,34, and Act No. 10 of the First Extra Session of 1935, toward the payment of any amounts which might be due on principal and interest, and provide a reserve fund therefor until the said bonds and interest thereon were finally paid and discharged. The Board of Administrators were further authorized to enter into a contract with the Federal Emergency Administrator of Public Work's, or any board, body or agency succeeding to its powers and duties, to secure any loan and/or grant for the purposes above set forth.
 

 “Pursuant to the provisions of the above mentioned acts, an executive meeting of the Board of Administrators was held on March 9, 1935, and, the entire Board being present, a resolution was adopted unanimously providing for the issuance of not exceeding Eight Million ($8,000,000.00) Dollars of bonds of the Board of Administrators of the Charity Hospital of Louisiana at New Orleans; fixing the form and details thereof; providing for the payment of said bonds and interest thereon; and the award thereof to the Federal Emergency Administration of Public Works, or other agency, public or private, all in accord with the provisions of the above mentioned act”
 

 The resolution of the Board of Administrators of the Charity Hospital of Louisiana at New Orleans is annexed to and made a part of relator’s original petition.
 

 
 *273
 
 There is also included in the pleadings a supplemental and amended petition, in which relator alleges as follows:
 

 “That the purported dedication of $400,000.-00 per year which is to be paid from the revenues derived from the taxes levied by Act No. 8 of 1932, as amended, to be used toward the payment of principal and interest that may be due by said Hospital to the Federal Emergency Administration of Public Works by reason of the contemplated loan, or to any purchaser Or holder of said bonds, has been eliminated by the provisions of Act No. 10 of the Special Session of 1935, and if said loan is completed the Hospital will not have sufficient revenues to meet the required payments, and that further the provisions of security would not enure to the benefit of any purchaser of said bonds.”
 

 In disposing of the relator’s contentions, the learned judge of the civil district court has written a concise but accurate and carefully considered opinion, which ,we quote with approval:
 

 “The Attorney General, in attempting to enjoin the Charity Hospital of Louisiana at New Orleans from entering into a contract with the Federal Emergency Relief Administration of Public Works, whereby the said Administration would undertake to lend the Charity Hospital approximately $8,000,000 for the purpose of demolishing certain buildings which now comprise the Hospital and erecting new ones in their place, and for which loan the Charity Hospital will issue bonds of its Board of Administrators, to be paid out of certain revenues dedicated to the Hospital by the State for that purpose, contends that the proposed demolition of the old hospital and construction of a new one and the proposed issuance and sale of bonds in connection therewith is ilegal, null and void.
 

 “The basis of his contention is that Act No. 166 of 1934 and section 11 of Act No. 8 of 1932, as amended by Act No. 18 of the Regular Session of 1934, as amended by Act No. 25 of the First Extraordinary Session of 1934, and as amended by Act No. 10 of the First Extra Session of 1935 are unconstitutional.
 

 “Act No. 166 of 1934 authorizes the Board of Administrators of the Charity Hospital of Louisiana at New Orleans to demolish certain of the old buildings and to erect new ones; the borrowing of the necessary money with which to accomplish this and the issuance of bonds in an amount not exceeding $8,000,000; the pledge of revenues and/or other funds and avails to secure the payment of the said bonds; and an agreement with the Federal Government for a loan and/or grant for the use of the Hospital. This act, in section 7, dedicates to the Board of Administrators of the Charity Hospital $400,000.00 per year from the proceeds derived from the collection of the Corporate Franchise Tax, levied by Act No. 8 of the Regular Session of 1932, and the Acts amendatory thereof.
 

 “The first objection of the Attorney-General is that section 11 of Act No. 8 of 1932, as amended, makes a ‘dedication’ to the Board of Administrators for thirty years, in violation of article 4, § 1 of the 1921 Constitution. However, the constitutional restriction is that no appropriation shall be made for a longer term than two years does not apply here, because the Legislature has made no appropriation to the Board of Administrators
 
 *275
 
 from the treasury of the State. The Act specifically provides that the money is to be paid by the Secretary of State directly to the Board of Administrators. Hence this is not an appropriation, but a dedication. Board of Hospital Administrators v. Richhart, 139 La. 446, 71 So. 735; Citizens’ Insurance Co. v. Hebert, 139 La. 708, 71 So. 955.
 

 “In regard to the second contention of the Attorney Generali, that Act 166 violates article 4 of section 2 of the 1921 Constitution in that it authorizes the Board of Administrators to incur a debt on behalf of the State, the jurisprudence is settled that bonds and debts of State Agencies, which are separate and distinct legal entities, are not debts or liabilities of the State. Caldwell Brothers v. Board of Supervisors of Louisiana State University et al., 176 La. 825, 147 So. 5; Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. 801, 811, 120 So. 373; Board of Commissioners of Tensas Levee District v. Earle, 169 La. 565, 125 So. 619; Munson v. Board of Commissioners of Atchafalaya Levee District, 43 La. Ann. 15, 8 So. 906; Excelsior Planting & Manufacturing Co. v. Green, Tax Collector, 39 La. Ann. 455, 459, 1 So. 873.
 

 “The contention that Act No. 166 of 1934 is unconstitutional because it authorizes the issuance of bonds by an agency of the State for purposes not authorized or contemplated by the provisions of article 4, § 2, of the Constitution of 1921 is unsound because not being obligations of the State, the bonds bonds do not fall within the restrictions of the above cited provisions of the Constitution.
 

 “The fourth contention of the Attorney General is that Act No. 166 of 1934 is unconstitutional because it pledges the credit of the State to a public corporation in violation of article 4, § 12, of the 1921 Constitution. In view of the language of the act, which expressly declares that the bonds shall be solely the obligations of the Board of Administrators and shall not be obligations of the State of Louisiana, the contention is untenable that these bonds will be backed by the credit of the State. The Supreme Court recently held, in the case of Caldwell Brothers v. Board of Supervisors of Louisiana State University, 176 La. 825, 147 So. 5, where the identical question was raised, that inasmuch as the bonds authorized to be issued by the Board are issued for its own exclusive purposes and benefit, the credit of the State was not pledged to their re-payment. Similar cases are Benedict v. City of New Orleans, 115 La. 645, 655, 39 So. 792; and, Excelsior Planting & Manufacturing Co. v. Green, 39 La. Ann. 455, 1 So. 873.
 

 “The contention that the bonds will be exempt from taxes, in violation of article 10, § 4, of the 1921 Constitution can be dismissed by quoting the salient parts of that article of the Constitution, ‘The following property, and no other, shall be exempt from taxation: obligations of the State or its political subdivisions.’
 

 “The Constitution of 1921, in article 10, § 1 provides that the power of taxation shall be vested' in the Legislature. The Attorney General contends that the Legislature is not empowered to authorize the levy and collection of a tax and a dedication of the proceeds derived therefrom for the specific purposes set forth in section 7 of Act No. 166 of 1934 and as provided for in section 11 of-
 
 *277
 
 Act No. 8 of 1932, as amended). There can be no question that the tax itself is valid as far as the dedication of the proceeds is concerned, it is settled that it is not in the province of the Court to inquire into the Policy or wisdom, of the Legislature in adopting a particular method of apportioning and collecting a tax, in view of article Í0, § 1 of the Constitution, Lionel’s Cigar Store v. McFarland, 162 La. 956, 111 So. 341. In addition, it is fundamental law that the Legislature has all powers of legislation not specifically denied it by the Constitution. There being no prohibitive restriction in the Constitution, the Legislature has full authority to pass legislation of this type.
 

 “The Attorney General contends that if the Federal Emergency Administration of Public Works grants this loan, it would not be collectable or enforceable under the provisions of Act No. 2 of the Second Extra Session of 1934. This contention is unsound. The provisions of sections 1, 9 and 14 of Act No. 2 of the Second Extra Session of 1934 specifically excludes these bonds.
 

 “The last objection raised by the Attorney General is that section 11 of Act No. 10 of the First Extra Session of 1935 deprives the Board of Administrators of the $400,-000.00 per year which had been dedicated by the Legislature. The act of 1935 in no way has that effect. It merely provides that until contract may be finally executed the amount so dedicated shall be used by the Louisiana State University. This act was passed to provide a use for that sum of money until the loan be made. The Act is clear that when the contract is executed, the dedication shall immediately revert to the Board of Administrators of the Charity Hospital.”
 

 We are of the opinion that certain reasons, in addition to those assigned by the trial judge in passing upon the issues raised by relator in his supplemental and amended petition, should be added to Judge Bond’s opinion by this court. Inasmuch as the reasons referred to are incorporated in respondent’s brief, we quote therefrom, with approval, the following:
 

 “The Attorney General contends that the effect of Act No. 10 of the First Extra Session of 1935 is to deprive the Charity Hos-' pital of the funds dedicated under the provisions of the’Corporate Franchise Tax and Act No. 166 of 1934, and further that the provisions of security would not enure to the benefit of any purchaser of said bonds, except the Federal Emergency Administration of Public Works. This contention is easily refuted by an examination of the act.
 

 “The act provides that until the contemplated loan from the Federal Emergency Administration of Public Works is finally executed, the money dedicated shall be paid over by the Secretary of State to the Louisiana State University.
 

 “This act was in no way intended to affect the dedication, other than to provide a use for idle money, which was sorely needed by other departments of the State. The Legislature did not intend to deprive the Charity Hospital of the dedication, nor to divert the money to other sources. In the event that the loan was never made, then the money would continue to accumulate for a nonexistent purpose. The act is clear that the
 
 *279
 
 money dedicated shall revert back to the Charity Hospital at the instant that the contract with the Federal Emergency Administration of Public Works is executed.
 

 “By the same token, the provisions for security to holders other than the Federal Emergency Administration of Public Works, was not affected, nor did the Legislature have any intention of affecting or altering such provisions. The omission of the Legislature in failing to mention other holders in Act No. 10 of the First Extra Session of 1935, cannot affect a negotiable bond. The resolution adopted by the Board of Administrators, a copy of which has been filed in these proeeedings, specifically provides that the bonds shall be payable to bearer. (Tr. 11.)
 

 “In view of the fact that the bonds will be negotiable instruments, can it be said that the failure of the Legislature to specifically provide in Act No. 10 of the First Extra Session of 1935 that the 'bonds shall be payable to holders other than the P. W. A., has the effect of depriving such other holders of the benefits of the securities pledged? We submit that this question can only be answered in the negative.”
 

 For the reasons assigned, the judgment appealed from is affirmed.