(71 South. 955)

No. 21650.

CITIZENS' INS. CO. v. HEBERT, Secretary of State.

(Jan. 24, 1916. On Rehearing, June 5, 1916.)

*(Syllabus by Editorial Staff.)*

1. INSURANCE ⬥⟹20—FOREIGN CORPORATIONS —RIGHT TO DO BUSINESS—"TAX"—STATUTE.

Act No. 295 of 1914, requiring foreign fire insurance companies to pay the state treasurer 1 per cent. of premiums received, to be turned over to the proper officers of the fire departments of cities, towns, and villages, under penalty of $500 or revocation of their license to do business in the state, does not levy a "tax," though it is a requisition by the sovereign authority of

an amount of money to be contributed toward the public expenses, as it lacks the essential feature of a tax of being obligatory.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 16, 18–22; Dec. Dig. ☜20.

For other definitions, see Words and Phrases, First and Second Series, Tax.]

**2. TAXATION** ☜24 — CONSTITUTION — STATE PURPOSES.

Local assessments for local purposes do not come within Const. arts. 224, 227, providing that the Legislature can itself directly exercise the taxing power only for state purposes.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 57; Dec. Dig. ☜24.]

**3. TAXATION** ☜24 — STATE PURPOSE — FIRE INSURANCE — CONDITION OF DOING BUSINESS—STATUTE—CONSTITUTIONALITY.

Act No. 295 of 1914, requiring foreign fire insurance companies to pay the state treasurer 1 per cent. of premiums received, to be turned over to the proper officers of the fire departments of cities, towns, and villages, under penalty of $500 or revocation of their license to do business in the state, is not violative of Const. arts. 224, 227, providing that the Legislature can itself directly exercise the taxing power only for state purposes.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 57; Dec. Dig. ☜24.]

**4. TAXATION** ☜20 — EXTRATERRITORIAL JURISDICTION.

The taxation power of a state has no jurisdiction over persons or property outside of the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 51–54; Dec. Dig. ☜20.]

**5. STATES** ☜119—LOAN OF CREDIT—FIRE INSURANCE—CONTRIBUTION TO FIRE DEPARTMENTS.

Act No. 295 of 1914, requiring foreign fire insurance companies to pay the state treasurer 1 per cent. of premiums received, to be turned over to the proper officers of the fire departments of cities, towns, and villages, under penalty of $500 or revocation of their license to do business in the state, is not violative of Const. art. 58, providing that the funds, credit, property, and things of value of the state shall not be loaned, pledged, or granted to or for any person or persons, association or corporation, public or private.

[Ed. Note.—For other cases, see States, Cent. Dig. § 118; Dec. Dig. ☜119.]

**6. STATES** ☜130—APPROPRIATIONS—NECESSITY—FIRE INSURANCE—CONTRIBUTING TO FIRE DEPARTMENTS—CONSTITUTIONALITY.

Such provision is not violative of Const. art. 45, providing that no money shall be drawn from the treasury except in pursuance to specific appropriation made by law, and no appropriation of money shall be made for more than two years, since the constitutional provision has application only to moneys properly belonging to the state that have gone into the treasury subject to appropriation.

[Ed. Note.—For other cases, see States, Cent. Dig. § 128; Dec. Dig. ☜130.]

**7. CONSTITUTIONAL LAW** ☜81 — "POLICE POWER"—"SOVEREIGN POWER."

In its broader sense the term "police power" of the state is in a measure convertible with the term "sovereign power."

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. ☜81.

For other definitions, see Words and Phrases, First and Second Series, Police Power; Sovereign Power.]

**8. INSURANCE** ☜18—FOREIGN COMPANIES — RIGHT TO EXCLUDE.

The state has the right to exclude a foreign insurance company that has established a business in the state.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 13, 14; Dec. Dig. ☜18.]

**9. CONSTITUTIONAL LAW** ☜101—INSURANCE ☜4—VESTED RIGHTS—FOREIGN CORPORATION.

The aforesaid requirement of Act No. 295 of 1914 is not unconstitutional as divesting vested rights; the permission previously given a foreign insurance company to do business in the state not being a vested right.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 209–211; Dec. Dig. ☜101; Insurance, Cent. Dig. § 4; Dec. Dig. ☜4.]

**10. CONSTITUTIONAL LAW** ☜130 — OBLIGATION OF CONTRACTS.

Said provision is not unconstitutional as impairing the obligation of contracts; the permission previously given a foreign insurance company to do business in the state not being a contract.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 301; Dec. Dig. ☜130.]

**11. STATUTES** ☜113(3) — TITLE — CONSTITUTIONALITY.

Act No. 295 of 1914, entitled, "An act to declare and define the conditions upon which foreign fire insurance companies, etc., doing business in this state may engage and carry on business, etc., and to provide for the distribution of funds arising from the compliance with this act," requiring foreign fire insurance companies to pay the state treasurer 1 per cent. of premiums received, to be turned over to the proper officers of the fire departments of cities, towns, and villages, under penalty of $500 or revocation of their license to do business in the state, is not violative of Const. art. 31, requiring the object of every act to be expressed in its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 144; Dec. Dig. ☜113(3).]

O'Niell, J., dissenting.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit by the Citizens' Insurance Company against Alvin E. Hebert, Secretary of State. From a judgment for plaintiff, defendant appeals. Judgment set aside, injunction dissolved, and suit dismissed.

R. G. Pleasant, Atty. Gen., and Harry Gamble, Asst. Atty. Gen., for appellant. J. Zach Spearing, of New Orleans (C. J. Doyle, of New York City, and Legier & Gleason, of New Orleans, of counsel), for appellee. Howe, Fenner, Spencer & Cocke, of New Orleans, amicus curiæ.

PROVOSTY, J. Plaintiff, a fire insurance company organized under the laws of Missouri, has enjoined the secretary of state from enforcing as against it Act 295, p. 603, of 1914, entitled

"An act to declare and define the conditions upon which foreign fire insurance companies, corporations or associations doing business in this state may engage and carry on business in this state and to provide for the distribution of funds arising from the compliance with this act."

Plaintiff alleges that it has complied with all the conditions heretofore imposed by the laws of this state upon foreign fire insurance companies for being allowed to do business in this state, and has heretofore been, and now is, engaged in doing business in this state, and desires to continue, but that the Legislature of this state has passed said act, and that the same is null, as violative of the following articles of the Constitution of this state: Article 31 requiring the object of every act to be expressed in its title; articles 224 and 227, providing that the Legislature can itself directly exercise the taxing power only for state purposes; article 58, providing that the funds, credit, property, and things of value of the state shall not be loaned, pledged, or granted to or for any person or persons, association, or corporation, public or private; article 45, providing that no money shall be drawn from the treasury except in pursuance of specific appropriation made by law, and no appropriation of money shall be made for a longer term than two years; articles 55 and 56, providing that all appropriations other than those made by the general appropriation bill shall be made by separate bills, which must embrace but one subject, each appropriation to be for a specific purpose; article 57, providing that no appropriation of money shall be made in the last five days of the session, or shall be valid unless the act making it is signed by the presiding officers of the two houses full five days before final adjournment; article 53, providing that no money shall be taken from the public treasury nor any appropriation made for private, charitable, or benevolent purposes to any person or community; and, finally, article 166, providing that no ex post facto law, nor any law impairing the obligation of contracts, shall be passed, nor vested rights be divested unless for purposes of public utility, and for adequate compensation previously made.

We give in the margin the allegation of the petition as to what is the substance of the act.[1] An outline of it here will suffice. It

[1] Section 1. That no fire insurance company not incorporated by the laws of this state; shall carry on any fire insurance business in this state save and except upon the conditions imposed in and by the said act as well as all other provisions now or hereafter imposed by law.

Sec. 2. That every fire insurance company, organized under the laws of any other state, or of any foreign government, desiring to engage in or carry on fire insurance business in this state, shall return to the secretary of state an account verified by oath of all premiums received from fire insurance business during the preceding year in any incorporated town, city or village in this state having, or that may have a regularly organized fire department under the control of the mayor and council, or other constituted authority and having in serviceable condition for fire duty, fire apparatus and necessary equipment belonging thereto to the value of

requires foreign fire insurance companies to keep an account of the business done by them in each of the incorporated cities, towns, and villages of the state that have a regularly organized fire department under the control of the corporate officers, and to make yearly to the secretary of state, at a date fixed, a sworn return, showing what premiums have been received by it in the preceding 12 months from the business done in each of said cities, towns, and villages, and to pay to the treasurer of the state, at a date fixed, 1 per cent. of the premiums thus received, under penalty of $500, or of revocation of its license to do business in the state in default of compliance with the act and of payment of said penalty of $500 in case it has been incurred, and requires the state

treasurer to pay over to the treasurers of the several cities, towns, and villages, the amount appearing to have been thus received from the business done in them respectively, to be turned over by the said corporate treasurers to the proper officers of the fire departments of the corporations, to be used exclusively for rendering such fire departments more efficient.

[1-3] The act does not profess to exercise the power of taxation; the word "tax" is not mentioned in it. It professes to withhold permission to do business in the state unless a certain contribution is made towards the maintenance of the fire departments of the several municipalities where the business is done. This contribution, undoubtedly, has some of the features of a tax. It is an

---

one thousand & 00/100 ($1,000.00) dollars and upwards.

And the said section 2 also provides that:

"Such returns must be made by said companies, corporations or associations within sixty days after the promulgation of this act and thereafter within sixty days after the thirty-first day of December of each year."

Sec. 3. That every such fire insurance company shall, within the above-mentioned respective periods of sixty days after the approval of the act or after December 31st, or each year, pay to the state treasurer, "the sum of $1 upon the $100, and at that rate upon the amount of all premiums written on fire insurance within the limits of such incorporated cities, towns or villages" hereinabove referred to during the preceding year.

Sec. 4. That every such company shall keep accurate books of all business done by it upon fire insurance within the limits of such cities, towns and villages and it is made the duty of the secretary of state to investigate such returns, if he has reason to suspect any irregularity, fraud or dishonesty.

Sec. 5. That upon the failure or neglect of any company affected by the terms of the act to keep such books or to report and pay over any of the money due on premiums at the time and in the manner specified in the preceding sections, or who shall make a false return of business, shall for each offense forfeit the sum of five hundred & 00/100 ($500.00) dollars to be applied to the purposes prescribed in the act.

Sec. 6. That in default of the payment of the tax or a failure to pay or satisfy any forfeiture adjudged to be due by the provisions of the act, the secretary of state is directed to revoke the license of such defaulting company to do business' in this state and after such revocation it

shall be unlawful for such company to do business in this state, though the secretary of state is authorized to renew or revive the authority to do business in this state upon the subsequent compliance with the terms of the act.

Sec. 7. The provisions of section 7 are in full as follows, to wit:

"That the state treasurer shall pay over to the treasurer of the cities, towns, or villages having or that may hereafter have a regular organized fire department, as aforesaid in section 2 of this act, the full and respective amounts collected upon the premiums on business done in each of said cities, towns or villages, respectively, from the foreign insurance companies, corporations or associations doing business therein. Provided, that the moneys so paid over to and received by the said cities, towns or villages shall be by them respectively set apart and used solely and entirely for the objects and purposes of this act."

Sec. 8. The provisions of section 8 are in full as follows, to wit:

"That all money so collected and received under the provisions of this act by the treasurer of any incorporated city or town or village, within thirty days from the time said moneys are received as aforesaid be paid over by said treasurer to the secretary treasurer, treasurer, or other fiscal representatives of the organized fire department, of said city, town or village. Provided, that all such moneys derived under the provisions of this act shall be used for the purpose of rendering more efficient and efficacious the fire department of said city, town or village as the board of commissioners, fire board or other governing body of said department shall see fit and direct, and for no other purpose whatsoever."

amount of money required by the sovereign authority to be contributed towards the public expenses. But it lacks the essential feature of a tax, of becoming obligatory; or, in other words, of having for its sanction some proceeding against person or property. Its sole sanction is the withholding of permission to do business. It can never become a debt. It is more in the nature of a price paid to the state for acquiring from her the permission to do business in her cities, towns, and villages. But even if, generally speaking, it were a tax, this would not necessarily bring it within the intendment of said articles 224 and 227 of the Constitution. Not every exercise of the taxation power comes within the contemplation of those articles. For instance, local assessments for local purposes do not. Charnock v. Levee District, 38 La. Ann. 323. And certain taxes are levied without any exercise at all of the taxation power, but of the police power. Cooley, Taxation, c. XIX. Those articles were never aimed at hampering the sovereign power of the state against a measure of this kind in the interest of local fire protection, but simply against the imposition of taxes, properly so called, for other than strictly state purposes.

[4] The taxation power of the state has no jurisdiction over persons or property outside of the state. The theory upon which this act proceeds is that these insurance companies are outside of the state, and are required to pay this amount for permission to come in. As a tax proper, this exaction, therefore, would under the theory of the act, be null as being imposed upon a subject outside of the state and beyond the jurisdiction of her taxation power. This shows it not to be a tax proper, but, as stated a while ago, more in the nature of a price paid to the state for the purchase of her permission to come in.

But the amount thus collected belongs to the state, it is said, and the state is prohibited from giving to the municipalities any of her moneys or things of value.

[5] We experience no difficulty in disposing of that contention. Very true, instead of having this money merely pass through her treasury on its way to the beneficiaries, the state might have had it remain there, like her other moneys, for defraying her own expenses; and in that sense the money is hers, and when she directs it to be turned over to the municipal fire departments she in a sense gives it to them. But if it were not for the special need of this money on the part of these municipal fire departments, and also of the peculiar relation in which they stand, or are supposed to stand, towards these fire insurance companies, serving to protect them from loss, this contribution would probably not be exacted at all, so that the state is in reality giving nothing by this statute, parting with nothing, but merely exercising her sovereign power in behalf of her municipalities for providing them with these funds from the expenditure of which the insurance companies, it is supposed, will derive a special benefit.

[6] As for the provisions against the withdrawing of money from the public treasury without an appropriation having been regularly made, they can have application only to moneys properly belonging to the state that have gone into the treasury subject to appropriation. The moneys to be realized under this act are not of that character. We freely recognize that these provisions are not to be circumvented by the simple device of not allowing the public moneys to go into the state treasury, or allowing them to go there only as belonging to certain beneficiaries and not to the state; that any measure which would be a mere subterfuge with that end in view would be null. But the present act does not present that objectionable feature. It is a case where certain moneys which the state would probably not exact for herself—would have no special reason for exacting for herself; in fact, might be unjustified in exacting for herself—are required

to be contributed towards a purpose in which the forced contributors are supposed to have a special interest. Other instances where moneys are thus attributed directly to the beneficiaries without the formality of a legislative appropriation are found in our laws; for instance, Act No. 53, p. 63, of 1882, requires the avails of the tax on auction sales to be paid directly to the board of administrators of the Charity Hospital; and Acts 122, p. 282, of 1904, and Acts 143, p. 221, of 1910, require the fire insurance companies to pay a certain amount to the state to be turned over to the fire prevention bureau, without the need of any appropriation by the Legislature.

[7] Among the grounds of injunction is not the one that said act of 1914 is violative of the Fourteenth Amendment of the federal Constitution. But that question arises incidentally, inasmuch as the validity of said statute is to be sustained only on the theory of its not being an ordinary taxation measure, but merely the exercise of the "police power" of the state, using that term in its broader sense in which it is, in a measure, convertible with the term "sovereign power." The question is not an open one. In Hooper v. California, 155 U. S. 652, 15 Sup. Ct. 207, 39 L. Ed. 299, the Supreme Court of the United States said:

"The principle that the right of a foreign corporation to engage in business within a state other than that of its creation depends solely upon the will of such other state has been long settled."

In Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 621, 19 Sup. Ct. 308, 43 L. Ed. 575, the court said:

"Each subsequent Legislature has equal power to legislate upon the same subject. The Legislature has at any time the power to repeal or modify the act granting such permission, making proper provision when necessary in regard to the rights of property of the company already acquired, and protecting such rights from any illegal interference or injury."

In Harrison v. St. Louis, 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F,

1187, where a railroad already established in a state was sought to be excluded, and the cases of Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148, and Security Life Ins. Co. v. Prewitt, 202 U. S. 248, 26 Sup. Ct. 619, 50 L. Ed. 1014, 6 Ann. Cas. 317, were invoked as authority, the court distinguished those cases, saying:

"Those cases involved state legislation as to a subject over which there was complete state authority, that is, the exclusion from the state of a corporation which was so organized that it had no authority to do anything but a purely intrastate business, and the decisions rested upon the want of power to deprive a state of its right to deal with a subject which was in its complete control, even though an unlawful motive might have impelled the state to exert its lawful power."

[8] Here the right of the state to exclude an insurance company that has established a business in the state is recognized. In the case at bar, the only respect in which the statute in question would affect the complainant company, so far as appears from the record, would be that it could no longer do business in the several municipalities of the state.

[9, 10] The objection as to vested rights being divested, or the obligation of contracts impaired, is sufficiently answered by what has been already said. The permission which the state has heretofore given to the plaintiff company to do business in this state is not a vested right, nor a contract.

[11] Remains the question of the sufficiency of the title of the act. The criticism made of it is that it conveys no intimation of an intention to impose a tax, although its real object is to impose a tax, and that, in stating merely that the object is to impose a condition upon the companies for being allowed to do business in the state, it is misleading and deceiving.

This title might have been made more full and explicit by mentioning what were the conditions the act was designed to impose, instead of merely stating in general terms that the object was "to declare and define"

these conditions; but, as appears from what has been already said in this opinion, what the act does is to impose upon fire insurance companies an additional condition for being allowed to do business in the state, and that object is certainly covered by the general terms that are used.

The judgment appealed from is therefore set aside; the injunction herein is dissolved, and this suit is dismissed at the cost of plaintiff in both courts.

O'NIELL, J., dissents, being of the opinion that the charge imposed on foreign insurance companies for doing business in this state, by Act No. 295 of 1914, is a license tax.

#### On Rehearing.

MONROE, C. J. The opinion and judgment heretofore handed down herein are reinstated and made the judgment of this court.

O'NIELL, J., dissents and hands down reasons. See 71 South. 959.