434 So.2d 1072 (1983)
AUDUBON INSURANCE COMPANY Louisiana Farm Bureau Mutual Insurance Company, Southern Farm Bureau Casualty Insurance Company, Cumis Insurance Society, Inc., MFA Mutual Insurance Company, Allstate Insurance Company and State Farm Mutual Automobile Insurance Company
v.
Sherman H. BERNARD, As Commissioner of Insurance and as Ex-Officio Chairman of the Louisiana Insurance Rating Commission, State of Louisiana, through the Honorable William J. Guste, Jr., Attorney General, Mary Evelyn Parker, Treasurer, and Shirley McNamara, Secretary of the Department of Revenue and Taxation.
AETNA CASUALTY AND SURETY CO., et al.
v.
Sherman H. BERNARD, et al.
No. 82-CA-2744.
Supreme Court of Louisiana.
June 27, 1983.
*1073 Ben C. Toledano, Gerald J. Gallinghouse, Margaret A. Bretz, Porteous, Toledano, Hainkel & Johnson, New Orleans, Louis D. Curet, D'Amico & Curet, Baton Rouge, for plaintiff-appellees.
Ben L. Day, Owen, Richardson, Taylor, Matthews & Atkinson, William G. Whatley, *1074 Law Firm of Theodore L. Jones, Jr., Baton Rouge, for intervenors-appellees.
William C. Toadvin, John L. Avant, Daniel Avant, Wallace A. Hunter, Baton Rouge, for defendants-appellants.
DENNIS, Justice.
The plaintiff insurance companies sue for judgment declaring unconstitutional Act 434 of the 1979 Regular Session of the Legislature. They claim that Act 434 is a nullity because the circumstances of its enactment violated the constitutional requirements that a statute levying a new tax or increasing an existing tax (1) be enacted by a vote of two-thirds of the elected members of each house, and (2) not be enacted during a regular session held in an odd-numbered year.[1] La. Const.1974, Art. 3 § 2; Art. 7 § 2. Interventions were filed by 35 additional insurance companies for the same purpose. Defendants are the state, the commissioner of insurance, the Firefighters' Retirement System and other state officials.
The district court agreed with the plaintiffs' argument and held that Act 434 of the 1979 regular session is unconstitutional. The defendants appeal directly to this court as is their right in a case in which a state law has been declared unconstitutional. La. Const. 1974, Art. 5 § 5(D)(1).
The 1974 Louisiana Constitution places limitations on the power of taxation vested in the legislature. La. Const. 1974, Art. 7 § 1. Among these are prohibitions against the levy of a new tax or an increase of an existing tax by a vote of less than two-thirds of the elected members of each house of the legislature, Id. Art. 7 § 2, or the enactment of a law levying a new tax or increasing an existing tax during a regular session held in an odd-numbered year. Id. Art. 3 § 2.
It is undisputed that Act 434 of 1979 was enacted during a regular session held in an odd-numbered year and by a vote of less than two-thirds of the elected members of each house. Accordingly, if the statute levies a new tax or increases an existing tax, it is unconstitutional and was correctly struck down. On the other hand, if the statute does not levy a tax, but merely constitutes an exercise of police power, or a dedication of revenues from an existing tax, it was properly enacted, because the constitution contains no special requirements for such legislation.
It is well settled generally and in Louisiana that not every imposition of a charge or fee by the government constitutes a demand for money under its power to tax. If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty and general welfare, it is an exercise of the police power. City of Lake Charles v. Wallace, 247 La. 285, 170 So.2d 654 (1965); Ewell v. Board of Supervisors, Etc., 234 La. 419, 100 So.2d 221 (1958); 4 Cooley, The Law of Taxation, § 1784 (4th Ed.1924). In similar fashion, the police power may be exercised to charge fees to persons receiving grants or benefits not shared by other members of society. Southern Pacific Transp. Co. v. Parish of Jefferson, 315 So.2d 619 (La.1975); City of Lake Charles v. Wallace, supra; Louisiana Ry. & Navigation Co. v. Madere, 124 La. 635, 50 So. 609 (1909); Griggsby Constr. Co. v. Freeman, 108 La. 435, 32 So. 399 (1902); Cf. National Cable Television Ass'n, Inc. v. United States, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); Cooley, supra. But if revenue is the primary purpose for an assessment and regulation is merely incidental, or if the imposition clearly and materially exceeds the cost of regulation or conferring special benefits upon those assessed, the imposition is a tax. Acorn v. City of New Orleans, 407 So.2d 1225 (La. 1981); Ewell v. Board of Supervisors, Etc., supra; City of New Orleans v. Heymann, 182 La. 738, 162 So. 582 (1935); State v. *1075 Wilson & Co., Inc. of Louisiana, 179 La. 648, 154 So. 636 (1934).
Applying these precepts, we conclude that the imposition of Act 434 of 1979 has for its primary object the raising of revenue. The legislative history and the provisions of Act 434 itself indicate that it is a tax and not just an incident of regulation for an assessment on persons for grants or special benefits.
Act 434 of the 1979 regular session sought to amend a pre-existing statutory scheme. The Louisiana Insurance Rating Commission is charged with the responsibility of insurance ratemaking for fire, marine and transportation (inland marine), title insurance and casualty insurance, including automobile theft, general liability and worker's compensation coverages. La.R.S. 22:1403. Originally, the commission was authorized to assess each insurer doing business in the state and subject to its jurisdiction, an amount not to exceed one percent of its gross retained premiums received in the state in the previous year, in order to pay the costs of the commission's operations and the enforcement of the laws under its supervision. La.R.S. 22:1419. This basic scheme was amended in 1973 and 1974 to provide that, in addition to the assessments necessary for the commission's operations, the commission shall collect from the insurers and pay into the state treasury an amount equal to 4/10 of 1% of such premiums for the Municipal Police Employees' Retirement System and 1/10 of 1% of such premiums for the Sheriffs' Pension and Relief Fund. See Act 323 of 1974; Act 188 of 1973.
Act 434 of 1979 purported to amend La. R.S. 22:1419 further to require that, in addition to the amounts assessed by the commission for its own operations, and the amounts collected by it for the police and sheriffs' funds, the Commission shall collect from the insurers an amount equal to 2/10 of 1% of the insurers' previous year's premiums for the Firefighters' Retirement System. The Firefighters' Retirement System is established by law for the purpose of providing retirement allowances and other benefits for firemen employed by any municipality, parish, or fire protection district of the state of Louisiana. La.R.S. 33:2151. Consequently, the assessment imposed by Act 434 is not levied for the purpose of defraying the cost of insurance regulation. Moreover, the evidence demonstrates without dispute that the police, sheriffs and firefighter assessments are in addition to the commission's assessment for its own operations and thus clearly and materially exceed the amounts assessed annually by the commission for the cost of regulation. In 1980, for example, although the assessment by the commission for its own operations and contingencies was approximately $3,203,000, the total assessments which the commission was required to make, including the firefighters, police and sheriff assessments, amounted to over $14,000,000. It is self-evident, therefore, that the principal purpose of the additional assessments, including the imposition for the Firefighters' Retirement System, is to raise revenue and that none is a mere incident of insurance ratemaking.
The attorney for the Firefighters' Retirement System argues, however, that the firefighter assessment is nothing more than a charge to persons who receive a special benefit or an imposition incidental to the commission's regulatory function. He says that a healthy Firefighters' Retirement System directly benefits casualty insurers because it makes the occupation of firefighters more attractive, assures continued employment of qualified persons, diminishes fire losses, and ultimately reduces insurance rates. Stated another way, he contends that an assessment collected to insure adequate fire protection, thus reducing insured losses and, therefore, the charge assessed to consumers is a proper and valid regulatory fee and not a tax.
Although the statute at issue addresses a legitimate state concern and its objective is a laudable one, it is nevertheless an exercise of the power of taxation. Its principal object is to raise revenues to strengthen the Firefighters' Retirement System and thereby eventually improve the quality of fire protection for the public in general. It is not an imposition limited to the extraction of fees from persons receiving a special *1076 benefit from government not shared by other members of society. All persons and entities benefit from better fire protection, not just fire insurers and their policyholders. Moreover, the imposition is made upon all casualty insurers, marine and transportation insurers, and title insurers, not just fire insurers. Since not all of these insurers would benefit from a reduction in fire insurance rates, this is another indication that the imposition is not a fee charged persons receiving a special benefit from more effective fire protection.
The assessment of charges for the purpose of improving fire protection and reducing fire insurance rates is not an incident of the insurance rating commission's regulatory function either. The commission's powers are limited to the regulation of insurance rates. La.R.S. 22:1401 et seq. This is not to say that the legislature is without the power to establish a regulatory agency with responsibilities for the improvement of fire protection and the reduction of fire insurance rates. But the statutory scheme under review is confined to ratemaking and does not encompass these concerns.
Finally, defendant argues that, even if the statute imposes a tax, it is not a new tax or an increase in an existing tax. La. R.S. 22:1419, as originally enacted, authorized the commission to make assessments in an amount sufficient to pay for its own operations and for the enforcement of the part of the insurance code relating to the commission. Now that Act 434 of 1979 has become a part of these provisions, defendant argues, the commission is simply called upon to exercise its preexisting powers of assessment and to remit the proceeds to the Firefighters' Retirement System; hence, the act does not levy a new tax or increase an existing tax, but merely directs the commission to exercise its preexisting powers to finance the retirement system. This ingenious argument will not sustain defendant's case, however. The act imposes a new tax because it obliges the commission to assess insurers 2/10 of 1% of their previous year's premiums for the firefighters' system regardless of the percentage assessed by the commission for its own operations. Consequently, the firefighters' assessment is a tax upon premiums in addition to any imposition by the commission for regulatory operations. It is a new tax, because if the commission expended all of its original assessment power for regulatory purposes, Act 434 would require a separate and additional assessment of 2/10 of 1% of insurers' premiums for the Firefighters' Retirement System.
For the reasons assigned, we conclude that Act 434 of 1979 levies a new tax during a regular session held in an odd-numbered year and was not enacted by the necessary vote of two-thirds of the elected members of each house of the legislature. Accordingly, we affirm the judgment of the trial court declaring this act unconstitutional.
AFFIRMED.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that Act 434 of 1979 imposed a tax. Rather, I consider it a regulatory measure enacted under the state's police power. As such, Act 434 is not a tax and therefore was not enacted in violation of art. 3, § 2(A) or art. 7, § 2 of the 1974 Louisiana Constitution.
A brief history of the legislative acts which preceded the enactment of Act 434 of 1979 is necessary for a better understanding of the issue presented. Act 302 of 1926 created the Louisiana Insurance Commission and the Louisiana Rating and Fire Prevention Bureau. The expenses for operating these regulatory bodies were authorized by way of an assessment against the insurers based on the gross premiums received in this state less returned premiums. In 1936, Act 44 created the Louisiana Casualty and Surety Rating Commission. The act also provided that the regulated insurers should bear the expenses of the Commission. Thereafter, in 1938, the legislature passed Act 122, section 1 of which limited the assessment to one percent of the gross premiums received in the state. In 1973, Act 188 added the Municipal Police Employees' Retirement System (four-tenths of the one percent of gross premiums) and *1077 in 1974, Act 323 added the Sheriffs' Pension and Relief Fund (one-tenth of the one percent of gross premiums). In 1979, Act 434, at issue herein, added the Firefighters' Retirement System. This act, which amended and reenacted La.R.S. 22:1419(A), provided in pertinent part:
an amount equal to two-tenths of one percent of the gross direct premiums received in this state, in the preceding year, by insurers doing business in this state and subject to this Part, less returned premiums shall be deposited by the commission with the state treasurer to be paid to the account of the Firefighters' Retirement System.
To be assessed under this act, the insurers must be "doing business in this state and subject to this Part" (Part 30 of Title 22 of the Louisiana Revised Statutes of 1950).[1]
The sole issue presented is whether that portion of Act 434 of 1979 which assesses certain insurers doing business in this state an amount equal to two-tenths of one percent of the gross direct premiums received in this state for the Firefighters' Retirement System is a tax passed in contravention of art. 3, § 2(A) and art. 7, § 2 of the 1974 Louisiana Constitution.
In Citizens' Ins. Co. v. Hebert, 139 La. 708, 71 So. 955 (1916), we held that a similar act was not a tax. The act in Citizens required all foreign fire insurance companies that did business in Louisiana to pay the state one percent of all premiums written in Louisiana. The money was then distributed by the state to localities for the purpose of improving their fire departments. The court noted that there was a distinction between the state's taxing and police powers.
In Cooley, The Law of Taxation, Chapter 1, § 27, the distinction between the police power and the power to tax is explained:
The distinction between a demand of money under the police power and one made under the power to tax is not so much one of form as of substance. The proceedings may be the same in the two cases, although the purpose is essentially different. The one is made for regulation and the other for revenue. If for regulation, it is an exercise of the police power while if for revenue it is an exercise of the taxing power.
Thus, it follows that if the demand of money is "an exercise of the police power, it is not a tax...." 4 Cooley, The Law of Taxation, Ch. 29, § 1784 (4th ed., 1924).
Recently, in Acorn v. City of New Orleans, 407 So.2d 1225 (La.1981), we reiterated the distinction between the taxing and police powers:
Under the police power, the power to license is the power to regulate, as distinguished from the power to levy a license tax to raise revenue under the taxing power. Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11 (1941). Thus, the power to levy a fee under the police power is separate and distinct from the power to impose a tax under the taxing power. The two powers should not be confused.
In Acorn, we held that a road use charge, which applied whether or not the vehicles were used on the streets, a tax because it was "imposed for the purpose of providing revenue" and was not "regulatory in nature."
Hence, the question in the instant case is whether the assessment levied on certain insurers for the Firefighters' Retirement System is a regulatory measure imposed under the state's police power or a tax imposed under its taxing power. Insurance is a business affected with the public interest and it is the purpose of this code (Insurance Code (La.R.S. 22:1-1912)) to regulate that business in all its phases. La.R.S. 22:2. Although I recognize that insurance companies are taxed pursuant to the Insurance Code (see La.R.S. 22:1061-1077), I do not consider that the provision of Act 434 involved herein is such a tax. Instead, Act 434 permits the Louisiana Insurance Rating Commission to "assess" certain insurance companies based on a percentage of gross direct premiums received in this state. These "assessments" are then paid to the account of the Firefighters' Retirement *1078 System. The benefits are obvious. By having a viable retirement system for firefighters, the continued employment of qualified firefighters is assured. The direct result of a good fire department is reduction of losses to the insured (and uninsured) and costs to the insurance companies. By reducing costs, the insurance companies are able to lower their rates to the insurance buying public, a specifically benefited class of persons. In my view, the primary purpose of the statutory provision was not to raise revenue. Rather, it was imposed as a regulatory measure under the state's police power.
In State Farm Mut. Auto. Ins. Co. v. Board of Trustees, 291 Ala. 250, 279 So.2d 512 (1973), the Alabama Supreme Court was confronted with a statute, similar to the one involved herein, which required all fire insurance companies to pay a percentage (one and one-half) of their gross fire premiums into a Firemen's Pension and Relief Fund. The court held that these payments were not taxes but rather "fees imposed on the writing of all fire insurance." I agree.
Hence, I consider that Act 434 of 1979 is not a tax and therefore was not enacted in violation of art. 3, § 2(A) or art. 7, § 2 of the 1974 Louisiana Constitution.
Accordingly, I respectfully dissent.
NOTES
[1] Assessments in years subsequent to 1980 are not challenged in these suits. The substance of Act 434 of the 1979 regular session was re-enacted by Act 799 of the regular session of 1980 during a session in an even-numbered year by a vote of two-thirds of the elected members of both houses of the legislature.
[1] La.R.S. 22:1403(A) provides that: "This Part applies to fire, marine and transportation (inland marine), title insurance and casualty insurance risks or operations in this state."