Dear Mr. Dillard:
You have requested an opinion of the Attorney General regarding the assessment and collection of service fees from residents of the Town of Newellton (Town) for the collection and disposal of solid waste. It is our understanding from your letter that, on July 1, 1998, a Local Services Agreement (Agreement) was entered into between the Tensas Parish Police Jury (Parish) and the Town. Under the terms of the agreement, the Parish agreed to pay the Town $5.00 per month for each curbside pickup and disposal.
The source for this Parish funding is 66 2/3% of the proceeds of a Parish sales tax for "Sanitary Landfill and Garbage Pickup". Prior to the execution of the Agreement, the Town assessed each resident a service fee in the amount of $6.00 per month. Subsequent to the execution of the Agreement the Town continued to collect a $3.00 fee, in addition to the $5.00 remittance by the Parish, for a total of $8.00. These revenues are deposited in a Garbage and Limb Pickup Account (Account).
You further state that you have examined a "Revenue/Expense" report from the Town which reflects a $30,068 surplus in the Account. You specifically ask whether the Town can accept reimbursement from the Parish while it is simultaneously collecting its own service charge, resulting in the surplus. You also ask whether the Town may transfer this surplus, or a portion thereof, into its General Fund.
In answer to your questions, we refer you to R.S. 33:4169.1
which authorizes the governing authority of every municipality to engage in the collection and disposal of garbage and trash within its jurisdiction, and to assess a service charge against any person for which this service is provided.
This office has consistently opined that the collection of a reasonable service charge to defray the operating expenses for solid waste collection and disposal, constitutes a reasonable means for the exercise of a governmental entity's power to protect and preserve the health and welfare of its citizens. Attorney General Opinion Nos. 98-401 and 93-582. The imposition of such a fee is an express power granted by the legislature which does not require electoral approval.
While political subdivisions of this State are accorded wide latitude in the regulation of their local economies under their police powers, any regulation imposing a service charge must be applied fairly and in a manner reasonably related to the entity's objective in accordance with due process. See City of LakeCharles v. Henning, 414 So.2d 331 (La. 1982). Thus, the fee should not be so excessive as to constitute an illegal tax, and must be applicable to all residents similarly situated and desiring the service. Attorney General Opinion Nos. 98-401, 93-582, 92-287 and 91-260.
We believe the answer to your first query is contingent upon whether the fee being charged by the Town is a regulatory fee or an illegal tax.
The distinction between a fee and a tax is discussed inAudubon Insurance Company v. Bernard, 434 So.2d 1072 (La. 1983). In accordance with that decision, if the imposition of a charge or fee by a governmental entity has not, as its principle object, the raising of revenue, but is merely incidental to the making of rules and regulations to promote the general public welfare, it is an exercise of the police power. If, however, revenue is the primary purpose for the assessment and regulation is merely incidental, or if the imposition clearly and materially exceeds the cost of regulation, the imposition constitutes a tax.
In City of Lake Charles v. Wallace, 247 La. 285,170 So.2d 654 (1965), the validity of a municipal ordinance imposing a service charge for the collection and disposal of solid waste was challenged. On rehearing, the Court expanded its ruling and concluded:
 A state or one of its subdivisions frequently receives income from other than taxation, so that all forms of public revenue cannot with accuracy be called taxes. Thus, a city or town is frequently authorized to furnish some form of public service for profit, or at least for compensation. Such charges are not in any just sense taxes. Thus, it is well settled that the charges made upon customers by municipal waterworks are not taxes, but merely the price paid for commodities sold. Nor may the following exactions be regarded as taxes: . . . a fee charged for . . . removing garbage.
 . . . Because the city charges a fee, and it may be hence argued that some incidental revenue would come to the municipality does not convert the ordinance into a revenue measure. . . Collection and disposal of refuse gathered by the city resulting in some small incidental revenue creates no municipality liability.
* * *
 We do not find that the instant charge assessed for the collection and disposal of garbage is a tax; it is a service charge. The fact that revenue was received from the collection of such service charge levied under the police power of the city . . . does not ipso facto convert the ordinance into a tax measure.
As can be gleaned from the above, a service charge does not constitute a tax merely because revenue was received from the collection of same. Conversely, a fee is a tax if the impositionclearly and materially exceeds the cost of the special benefits conferred. Attorney General Opinion Nos. 98-401 and 91-260. Based on the facts presented in your request, we find no basis to conclude that the service charge assessed by the Town clearly and materially exceeds the costs incidental to the collection and disposal of solid waste. We now focus on the issue of the purposes for which reasonable excess revenues derived from the garbage service charge may be used.
As stated hereinabove, R.S. 33:4169.1 authorizes the governing body of the Town to impose a solid waste collection and disposal service fee. We have consistently opined that excess revenues derived from such a service charge may be transferred to the governing authority's general fund to be used for other lawful purposes, as long as there is no statutory or contractual provision which would prohibit such transfer. We have further held that Section 4169.1(A)(4), authorizing the service charge, does not restrict the type of public purpose for which the revenues may be expended. Attorney General Opinion Nos. 91-260, 89-615 and 89-70.
Accordingly, it is our opinion that excess revenues generatedby the $3.00 service charge may be transferred to the Town's General Fund to be used for any lawful purpose. Certainly, the use of such revenues for the purpose of purchasing a garbage truck clearly falls within this category. We focus now on the surplus generated from the $5.00 remitted by the Parish to the Town.
As noted above, the Parish's reimbursement to the Town is derived from a sales tax, two thirds of which is dedicated to "Sanitary Landfill and Garbage Pickup". R.S. 39:704 provides, in pertinent part, the following:
 § 704. Proceeds of Special Tax
 The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used.
It has been consistently held by this office and the jurisprudence of this state that the scope of the authority for the expenditure of sales tax revenues is concomitant to the consent of the electorate. Accordingly, the ordinary sense of the words contained in the proposition is dispositive of its meaning for the electorate approving the tax. Further, special taxes are strictly construed. In Hemler v. Richland Parish School Board,142 La. 133, 76 So. 585 (1917), our Supreme Court held:
 It is a} familiar principle that laws authorizing taxation are in derogation of common right; and are therefore to be strictly construed. And this is especially true of laws authorizing special taxes. If, therefore, among the enumerated purposes for which a certain special tax is authorized to be levied, a certain particular purpose is not mentioned, the conclusion is inevitable that for this unnamed purpose the tax may not be levied.
The source of the Parish's reimbursement to the Town for garbage collection and disposal is derived from sales tax revenues dedicated for this specific purpose. While we have not been provided with a copy of the Local Services Agreement, it should contain a provision that Parish funding be used solely for its dedicated purpose. Any other use to the contrary would constitute a violation of R.S. 39:704, as the Parish would be attempting to do indirectly that which is directly prohibited by state law and the Parish tax proposition.
Further, the fact that these two sources of revenues (i.e., dedicated tax revenues and non-dedicated service charges) may be commingled by the Town does not divest the Parish funds of their dedicated status. Hence, that portion of the revenues derived from the $5.00 remittance by the Parish must be used solely for the expenses related to the collection and disposal of solid waste.
In summary, it is the opinion of this office that reasonable/incidental surplus revenues derived from the Town's assessment of a solid waste collection and disposal service charge may be deposited in the Town's General Fund and used for any lawful purpose. However, funds transferred by the Parish to the Town from the proceeds of sales tax revenues dedicated for the collection and disposal of solid waste can only be used for the purposes stipulated in the Parish sales tax proposition. This restriction should be reflected in the Agreement.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ________________________________ ROBERT E. HARROUN, III
Assistant Attorney General Date Received: Date Released:
ROBERT L. HARROUN, III ASSISTANT ATTORNEY GENERAL