# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## CA 20-556 consolidated with CA 20-557, CW 20-376, CW 20-377
## CW 21-155 & CW 21-156


**DANIEL L. MOORE AND**

**MARIE MOORE**

**VERSUS**

**CITY OF WESTLAKE**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-4200 C/W 2015-4201
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## J. LARRY VIDRINE*
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy H. Ezell, D. Kent Savoie, and J. Larry Vidrine*, Judges.


**AFFIRMED.**

---

* Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

J. Michael Veron
Peyton F. Pawlicki
Veron, Bice, Palermo & Wilson, LLC
P.O. Box 2125
Lake Charles, LA  70602-2125
(337) 310-1600
COUNSEL FOR DEFENDANT/APPELLEE:
 City of Westlake

Steven Broussard
Aaron Broussard
Michael Williamson
Jason R. Bell
Rachel K. Couvillion
John Mark Fezio
Broussard & Williamson, LLC
1301 Common Street
Lake Charles, LA  70601
(337) 439-2450
COUNSEL FOR PLAINTIFFS/APPELLANTS:
 Paula Johnson
 Marie Moore
 Philmer Johnson, Jr.
 Daniel L. Moore

Thomas P. Anzelmo, Sr.
Lynda Tafaro
McCranie, Sistrunk, Anzelmo,
Hardy, McDaniel & Welch, L.L.C.
909 Poydras Street, Suite 1000
New Orleans, LA 70112
(504) 831-0946
COUNSEL FOR DEFENDANTS/APPELLEES:
 OneBeacon Services, LLC
 Atlantic Specialty Insurance Company

Soren E. Gisleson
Charles M. King
Herman, Herman & Katz
820 O'Keefe Avenue
New Orleans, LA 70113
(504) 581-4892
COUNSEL FOR PLAINTIFFS/APPELLANTS:
 Daniel L. Moore
 Marie Moore
 Paula Johnson
 Philmer Johnson, Jr.

**VIDRINE, Judge Pro Tempore.**

This consolidated matter arises from whether Plaintiffs can annul ordinances passed by the City of Westlake in January of 2015. Plaintiffs in the matters assert that utility rate increases authorized by the municipal ordinances constitute taxes. Such taxes require a vote by those impacted in order to be enacted. In one proceeding, the court granted summary judgment to the City of Westlake approving the utility rate increases, while in another, Plaintiffs were granted partial summary judgment annulling the utility rate increases.

## FACTS AND PROCEDURAL HISTORY:

In 2015, two separate suits were filed against the City of Westlake and its insurer, One Beacon Atlantic Specialty ("Beacon Atlantic") challenging Ordinance 880, which increased utility gas rates. One of the two suits was filed on behalf of municipal gas customers living inside the City of Westlake, the other filed on behalf of those customers living outside the City of Westlake. These "gas rate" suits were consolidated and assigned to one division of the Fourteenth Judicial District Court.

In 2017, two additional lawsuits were filed against the City of Westlake challenging Ordinances 881 and 882 which raised the utility water and sewage rates. These "water and sewage" rate cases were assigned to a different division of the Fourteenth Judicial District Court than the gas rate cases.

Beacon Atlantic filed for and was granted exceptions of no cause of action dismissing the gas rate cases regarding the issue that the gas rate increases constituted an illegal tax and were discriminatory. Plaintiffs' sole remaining claim was that the gas rate increases were illegal because they were not tied to the cost of providing the service. Thereafter, the City of Westlake was granted its motion for summary judgment dismissing all Plaintiffs' claims related to Ordinance 880's gas rate increases.

Regarding the water and sewage rate cases, the parties filed competing motions for summary judgment. There, the trial court denied Westlake's motion for summary judgment to dismiss all of Plaintiffs' claims and granted Plaintiffs' partial motion for summary judgment on liability.

Each party filed appeals in both the gas, water and sewage rate cases. We consolidated the matters. The issue before us is whether Plaintiffs can successfully challenge Ordinances 880-882.

## STANDARD OF REVIEW:

In these consolidated matters, both summary judgments and exceptions of no cause of action were granted and denied. The peremptory exception of no cause of action is subject to a de novo review of the record. *Descant v. King Buffet, Inc.*, 20-310 (La.App. 3 Cir. 12/16/20), 310 So.3d 228. Motions for summary judgment are also subjected to a de novo review of the record. *Perry v. Rhodes*, 20-109 (La.App. 3 Cir. 9/30/20), 304 So.3d 1036. Therefore, we will conduct a de novo review of the issues raised in these consolidated matters.

## ISSUES PRESENTED FOR REVIEW:

1. Do Westlake's municipal ordinances 880-882 constitute illegal taxes?

2. Are Westlake's municipal ordinances 880-882 discriminatory?

3. Are Westlake's municipal ordinances 880-882 reasonable given one of their purposes was to generate revenue to Westlake's general fund?

## ISSUE PRESENTED FOR REVIEW NUMBER ONE:

Plaintiffs' first argument is that they have a valid cause of action as to whether Westlake municipal ordinances 880-882 constitute an improper tax. We find no merit to this argument.

A summary judgment is reviewed using the de novo standard of review by focusing on the identical criteria that govern the trial court's

2

consideration of whether summary judgment is appropriate. As such, we are tasked to make a determination whether the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.

In adjudicating a motion for summary judgment, a court cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Moreover, although summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor.

*GBB Properties Two, LLC v. Stirling Properties, LLC*, 18-158, pp. 2-3 (La.App. 3 Cir. 10/24/18), 259 So.3d 500, 502 (citations omitted), *writ denied*, 18-890 (La. 2/11/19), 263 So.3d 895.

In the case before us, notices of the proposed ordinances were published, public meetings were held, and the Westlake City Council passed them, per applicable law on municipal rate increases. However, none of the rate increases were submitted to the public for a vote for approval, as required for municipal tax increases.

The record establishes that Westlake had not previously increased its utility rates in twelve years. The rate increases were passed on the recommendation of David Medlin, an independent governmental consultant who volunteered to analyze the City's financial status and compared the city's utility rates to some nine (9) other municipal systems. The ordinances increased by 50%, then 4% per year thereafter, the identical municipal utility charges imposed on customers inside and outside of Westlake for natural gas, water, and sewer utility services.

Plaintiffs support its argument that the ordinances constitute illegal taxes by citing *Audubon v. Bernard*, 434 So.2d 1072 (La.1983). In *Audubon*, our supreme court dealt with legislation allowing the Insurance Rating Commission to collect from insurers a percentage of their collected premiums to go towards the

Firefighter's Retirement System. Plaintiffs in this matter point out that the *Audubon* court stated:

> It is well settled generally and in Louisiana that not every imposition of a charge or fee by the government constitutes a demand for money under its power to tax. If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty and general welfare, it is an exercise of the police power. In similar fashion, the police power may be exercised to charge fees to persons receiving grants or benefits not shared by other members of society. But if revenue is the primary purpose for an assessment and regulation is merely incidental, or if the imposition clearly and materially exceeds the cost of regulation or conferring special benefits upon those assessed, the imposition is a tax.

*Audubon*, 434 So.2d at 1074 (citations omitted).

According to Plaintiffs, by applying these principles expressed in *Audubon*, this court should find that the Westlake ordinances constitute taxes because their primary purpose is to generate revenue. We agree that the purpose of ordinances 880-882 was to generate revenue. The City of Westlake stated as much when it acknowledged that it was nearly bankrupt due to declining revenues when these ordinances were passed, and that it had an urgent need to generate revenue.

However, while we are mindful of the excerpt of *Audubon* cited by Plaintiffs, we find Plaintiffs' assertion that if a law has a primary purpose of generating revenue, then it is a tax, is not an accurate interpretation of *Audubon*, nor of our supreme court's ideals regarding such a bright-line rule on whether legislation constitutes a tax.

In *City of Lake Charles v. Wallace*, 170 So.2d 654 (La.1964), our supreme court upheld the constitutionality of a city ordinance that declared that the collection and disposal of garbage was a revenue-producing utility and imposed a service charge to defray the expenses of disposal and maintenance. Of note, our supreme

4

court stated in *Wallace*, 170 So.2d at 660 (quoting Am.Jur.Taxation, § 16, pp. 48-49) stated the following:

> (A state or one of its subdivisions frequently receives income from sources other than taxation, so that all forms of public revenue cannot with accuracy be called taxes. Thus, a city or town is frequently authorized to furnish some form of public service for profit, or at least for compensation. Such charges are not in any just sense taxes. Thus, it is well settled that the charges made upon consumers by municipal waterworks are not taxes, but merely the price paid for commodity sold.)

Further, we find *Audubon* distinguishable from this case. The Louisiana Supreme Court in *Audubon* struck down an amendment to La.R.S. 22:1419 (now La.R.S. 22:1476) that required insurers and policyholders of every kind to pay an assessment based on percentage of collected premiums that benefitted the Firefighters' Retirement system. *Audubon* addressed legislatively-imposed assessment on insurers, rather than revenue generated from a revenue-producing public utility. This distinguishment is relevant because legislatively-created authorizations for revenue generation is not the same for the Louisiana Insurance Rating Commission as it is for municipalities. Taxes are not the only forms of permissible revenue for local governments.

Part II of Louisiana Constitution Article 6 authorizes local governments to establish revenue-producing public utilities. Louisiana Constitution Article 6, § 37, states, in part, the following:

> **(A) Authorization.** The legislature by law may authorize political subdivisions to issue bonds or other debt obligations to construct, acquire, extend, or improve any revenue-producing public utility or work of public improvement. The bonds or other debt obligations may be secured by mortgage on the lands, buildings, machinery, and equipment or by the pledge of the income and revenues of the public utility or work of public improvement. They shall not be a charge upon the other income and revenues of the political subdivision.

5

In accordance with La.Const. art. 6, § 37, La.R.S. 33:4161 - 33:4320 provides for the creation and funding of revenue-producing public utilities, which are defined as:

> [A]ny revenue-producing business or organization that regularly supplies the public with a commodity or service, including electricity, gas, water, . . ., and other like services; or any project or undertaking, including public lands and improvements thereon, owned and operated by a political subdivision authorized by the Constitution of Louisiana or by law to issue bonds, from the conduct and operation of which revenue can be derived.

La.R.S. 33:4161.

Additionally, La.R.S. 33:4163 authorizes a political subdivision, such as Westlake, to "sell and distribute the commodity or service of the public utility . . . and may establish rates, rules, and regulations with respect to the sale and distribution."

Accordingly, we find that a political subdivision may legally raise revenue for its general funds from revenue-producing public utilities as authorized by La.Const. art. 6, § 37 and La.R.S. 33:4161 - 33:4320. See *Bd. of Com'rs of La. Mun. Power Comm'n v. All Taxpayers, Property Owners, and Citizens*, 360 So.2d 863, 868 (La.1978), wherein our supreme court acknowledged that "historically, net utility revenues have been transferred to the general funds of the cities."

Further, we find no merit to Plaintiffs' argument that it was impermissible for Westlake to pass ordinances 880-882 beyond the cost to operate and fund the utility without subjecting those ordinances to a public vote as taxes. As established above, the fact that an ordinance has a purpose of generating revenue does not mandate that the ordinance is a tax. Here, Westlake's ordinances, while for the stated purpose to generate revenue, relate to its legal sale of commodities through utility services.

Accordingly, we find that Westlake Ordinances 880-882 are not taxes. As such, a public vote was not mandated for the ordinances' legal enactment. Passage by Westlake's City Council and Mayor were sufficient.

**ISSUE PRESENTED FOR REVIEW NUMBER TWO:**

Plaintiffs second issue presented for review is that Westlake's Ordinances 880-882 were discriminatory, and, hence, illegal. We find no merit to this issue presented by Plaintiffs.

Plaintiffs cite *Hicks v. City of Monroe Utility Commission*, 237 La. 848, 112 So.2d 635 (1959) for its position that Westlake's ordinances 880-882 were discriminatory. We find *Hicks* inapplicable to the case before us. In *Hicks*, the City of Monroe acquired a for-profit out-of-town water system, then issued its newly acquired out-of-town customers notice that they would have to pay some 400% more for the water unless they also obtained their electricity services from Monroe's electrical system rather than a competitor, Louisiana Power and Light. Thus, *Hicks* dealt with whether a municipality-owned utility could charge a higher rate for water to customers outside its city limits who take water service only than it would charge for water to those customers outside the city who take the combined service of water and electric power. In *Hicks* the Louisiana Supreme Court struck down the utility fee increase because it "[was] entirely collateral to and unconnected with the particular service being rendered." *Id.* at 649.

Here, Westlake's increased utility fees are charged only against utility customers that benefit from the services the municipality is providing and at a uniform rate. There is no evidence that Westlake is charging higher fees to customers outside the city limits, nor is there any evidence that Westlake is attempting to coerce its customers to bundle their municipal utility services.

7

Therefore, we find *Hicks* inapplicable to the case before us. Further, we find that Westlake's ordinances 880-882 are not discriminatory due to their uniform application to its customers.

**ISSUE PRESENTED FOR REVIEW NUMBER THREE:**

The final issue presented for review is whether Westlake's Ordinances 880-882 were reasonable given that one of their stated purposes was to generate revenue for Westlake's general fund. We find that the ordinances were reasonable.

In *Liberty Rice Mill, Inc. v. City of Kaplan*, 95-1656, p. 5 (La.App.3 Cir. 5/8/96), 674 So.2d 395, 398, *writ denied*, 96-1919 (La. 11/1/96), 681 So.2d 1263, this court stated:

> The regulation of public utility rates rests solely with the agency or political subdivision of the state vested with the authority to supervise the operation of the utility, subject to judicial review of the reasonableness of the regulation. *State ex rel. Guste v. Council of City of New Orleans,* 309 So.2d 290 (La.1975). A classification and a rate schedule made for the purpose of keeping in the community industries that employ a large number of persons is not "unreasonable." There may have been other, "better" schemes, but that is neither the issue nor the standard by which a municipal's actions in this area are judged. The action by the city need only be reasonable. The scheme enacted in this case is reasonable and understandable—even laudatory in the sense that it is the expression of the hope that the entire community will benefit and prosper.

This court determined in *Liberty Rice* that it was "in the interest of the public" for the City of Kaplan to strategically discriminate its utility rates such as to charge one commercial employer less than another to stimulate economic growth by preserving jobs. Based on *Liberty Rice*, this court has iterated, except in clear-cut situations of unreasonableness like in *Audubon* or *Hicks,* great deference is given to local utility providers and regulators.

Reviewing the record before us, the City of Westlake was confronted with an imminent financial crisis and took the steps immediately available to avert that crisis.

8

Those steps involved increasing its municipal revenues via utility rate increases, of which had not occurred in the previous twelve years. Given our finding in *Liberty Rice*, wherein we found it reasonable to directly discriminate in favor of one customer for the public economic welfare, we find that Westlake's Ordinances 880-882 were reasonable considering that their application is uniform and for the stated purpose of preserving the City of Westlake's economic viability.

**ANCILLARY MATTER:**

Both Plaintiffs and Beacon Atlantic address whether Beacon Atlantic's policy of insurance sold to Westlake provided coverage in this matter. Our findings that Westlake's ordinances 880-882 were legally enacted, were not discriminatory, and were reasonable pretermits this issue.

**CONCLUSION:**

The parties addressed whether Westlake's Ordinances 880-882 dealing with utility rate increases for gas, water, and sewage were legally enacted, discriminatory, and reasonable. We render that these ordinances were legally enacted, were not discriminatory, and were reasonable. Therefore, we reverse the judgment of the trial court granting Plaintiffs' motion for summary judgment and affirm the judgment of the trial court granting Westlake's motion for summary judgment dismissing all claims by Plaintiffs regarding the propriety of Ordinances 880-882. Further, we pretermit the issues raised pertaining to insurance coverage provided by One Beacon Atlantic Specialty. Costs of this appeal are assessed to Plaintiffs.

**AFFIRMED.**