Dear Mr. Gannuch,
Your request for an Attorney General's Opinion has been assigned to me for research and reply. You have asked the following:
 Is the State Market Commission required to obtain the approval of the Louisiana State Bond Commission prior to making loans and loan guarantees under the Louisiana Agricultural Products Processing Development Law, La.R.S. 3:445.1, et seq.?
The State Market Commission was created by La.R.S. 3:401 within the Louisiana Department of Agriculture and Forestry. One function of the State Market Commission is to administer the provisions of the Louisiana Agricultural Products Processing Development Law, La.R.S. 3:466.1-466.7. The Louisiana Agricultural Products Processing Development Law authorizes the State Market Commission to make loans and guarantees for certain purposes. La.R.S. 3:436.4(A) provides:
 A. As part of the commission's participation in cooperative endeavors, the commission may:
 (1) Loan to any person funds to be actually expended to acquire, construct, furnish, equip, make necessary improvement to, or purchase land for, any agricultural plant which will be occupied by the person, under rules and regulations adopted by the commission, which loan shall not exceed seventy-five percent of the value of the property offered as security pursuant to a first mortgage, but requiring at a minimum the execution by the borrower of a note secured by a first mortgage on the property *Page 2 
being acquired or constructed and payable to the commission within such time and under such terms and conditions together with such additional endorsements as may be required by the commission.
 (2) Loan to any person funds for operating capital, market development, and product inventories under rules and regulations adopted by the commission, which loan shall not exceed seventy-five percent of the value of the property offered as security pursuant to a first mortgage, but requiring as a minimum the execution by the borrower of a note or notes secured by a first mortgage on property, including product inventories and accounts receivable from the sale of inventories, under such terms and conditions as may be required by the commission.
 (3) Guarantee, on an interim or long-term basis, funds for an amount to be actually expended to acquire, construct, furnish, equip, make necessary improvement to, or purchase land for, any agricultural plant for any loan made by any lender to any person approved by the commission, provided that whenever the commission guarantees the payment of such loan, the commission shall make and enter into a guarantee agreement with the lender and the borrower setting forth the terms and conditions under which the commission is obligated and the extent to which repayment of the loan is guaranteed and secured. Each loan which is guaranteed by the commission shall be secured by a first mortgage on property. Whenever the commission enters into such loan guarantee agreement, the commission may impose and collect an origination fee not to exceed one percent of the amount of the loan guaranteed.
 (4) Guarantee, on an interim or long-term basis, to any person funds for operating capital, market development, and product inventories, under rules and regulations adopted by the commission but requiring as a minimum the execution by the borrower of a note or notes secured by a first mortgage on property, including product inventories and accounts receivable from the sale of inventories, under such terms and conditions as may be required by the commission.
La.R.S. 3:436.4(A) clearly authorizes the State Market Commission to make loans and guarantees in certain circumstances. Past opinions of this office have also recognized the State Market Commission's authority to make loans and guarantees in certain situations. See Atty. Gen. Op. Nos. 77-263, 77-654, 77-871, 83-916, 89-252. However, none of these opinions have addressed whether loans or guarantees made by the State Market Commission require the prior approval of the State Bond Commission. *Page 3 
Your opinion request notes that earlier versions of La.R.S. 3:436.4(A) required the State Market Commission to obtain approval from the Board of Liquidation of State Debt before making a loan or guarantee but that the present statute does not expressly require the State Market Commission obtain approval from the State Bond Commission or any other state agency to make guarantees/loans.[1] However, just because a statute authorizes a commission to do something does not mean that other laws are not applicable. For example, many public bodies are authorized by statute to incur debt but they must receive approval from the State Bond Commission before doing so. The absence of language requiring State Bond Commission approval cannot be interpreted to mean that it is not required. The following provisions of law address when State Bond Commission approval is required:
Article VII, § 8(B) of the Louisiana Constitution of 1974 provides:
 No bonds or other obligations shall be issued or sold by the state, directly or through any state board, agency, or commission, or by any political subdivision of the state, unless prior written approval of the bond commission is obtained.
La.R.S. 39:1405(B) provides:
 No person or entity, public or private, shall incur debt or issue evidences of indebtedness for the purpose of financing any project in the state of Louisiana, the interest upon which indebtedness or evidence thereof is exempt from federal income taxation under Section 103 of the Internal Revenue Code of 1954, without the consent and approval of the State Bond Commission. Any evidence of indebtedness incurred or issued in violation of this Section shall be null and void and no court of this state shall have jurisdiction to enforce the payment thereof pursuant to the provisions of R.S. 47:1806.
La.R.S. 39:1410.60 provides:
 A. No parish, municipality, public board, political or public corporation, subdivision, or taxing district, and no road or subroad district, school district, sewerage district, drainage or subdrainage district, levee district, waterworks or subwaterworks district, irrigation district, road lighting district, harbor and terminal district, or any other political subdivision, taxing district, political or public corporation, created under or by the constitution and laws of the *Page 4 
state shall have authority to borrow money, incur debt, or to issue bonds, or other evidences of debt, or to levy taxes, or to pledge uncollected taxes or revenues for the payment thereof, where they are authorized by the constitution or laws of the state so to do, without the consent and approval of the State Bond Commission.
The letter attached to your opinion request states that "[d]ebts and bonds of state agencies which are separate legal entities are not debts or liabilities of the State within the context of Article VII, § 6(A)." The case cited in support of this proposition is State ex rel. Porteriev. Charity Hospital of Louisiana at New Orleans, 182 La. 268, 161 So. 606
(La. 1935). In that case, the hospital entity was allowed to issue bonds because the court reasoned that the bonds were not obligations of the state, but of the administrators of the hospital. Porterie as well as other cases[2] that have held that debts and bonds of state agencies which are separate legal entities are not debts and liabilities of the State all deal with debt instruments that do not have the full faith and credit of the State behind them, such as bonds secured by revenue from limited sources. These cases do not present an example of a state agency issuing a debt instrument which has the full faith and credit of the State being treated as a separate legal entity and thus, not a debt of the State. In Limits on Borrowing and Donations in the LouisianaConstitution of 1975, 62 La. L.Rev. 137 (2001), Professor Lee Hargrave points out that, "[t]he cases may be distinguished on the grounds that the rationale supporting their result is that the bonds were not full faith and credit instruments and permitted on that ground rather than on the ground they were issued by entities that were not the state." Id. at 181.
Black's Law Dictionary defines `guaranty' as "a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance." Black's Law Dictionary (8th ed., 2004). In Atty. Gen. Op. No. 94-452, our office defined a guarantee as a "contingent obligation." Although becoming responsible for the debt is contingent upon the original debtor defaulting, by guaranteeing the debts of others, the State Market Commission, and through it the State, assumes a contingent liability. In the event that the original debtor cannot make the payment, the State Market Commission, as guarantor, will incur the debt and become liable. Louisiana law is clear that a public entity cannot incur debt or issue evidences of indebtedness for the purpose of financing any project in the State of Louisiana without the consent and approval of the Bond Commission. La.R.S. 39:1405(B); Atty. Gen. Op. No. 05-0039. In Atty. Gen. Op. No. 03-0189, this office opined, "[a]rt. VII, Sec. 8 of the Louisiana Constitution mandates that a political subdivision of the *Page 5 
state obtain written approval of the State Bond Commission before it can incur any type of debt or financial obligation. Thus, the town cannot co-sign or guarantee a bank note, i.e., incur debt, without prior, written approval of the State Bond Commission." Further, Executive Order BJ 2008-29 provides, "[a]greements in which the state provides a guarantee or credit enhancement for a private for-profit entity and which do not contemplate the issuance of bonds should be submitted to the State Bond Commission for approval prior to execution. Evidence of necessary Bond Commission approval should be attached to the submitted agreement." Therefore, it is the opinion of this office that the State Market Commission must seek State Bond Commission approval before guaranteeing the debts of others.
We do not believe, however, that the State Market Commission must obtain approval from the State Bond Commission before making loans. The State Market Commission is specifically authorized by 3:436.4(A) to make loans for certain purposes and doing so does not result in the State Market Commission incurring a debt.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ Lindsey K. Hunter Assistant Attorney General
 JDC/LKH/crt
[1] Acts 1944, No. 113 gave the State Market Commission the authority to make loans and guarantees. However, the Act required the State Market Commission to obtain prior consent and approval of the Board of Liquidation of State Debt. The requirement that the State Market Commission obtain the prior approval of the Board of Liquidation of the State Debt remained a part of the statute through several revisions and was taken out by Acts 1978, No. 242 § 1 and has not been replaced with similar language.
[2] See e.g., Excelsior Planting Mfg. Co. v. Green, 39 La. Ann. 455, 1 So. 873 (1887) (state could establish levee districts which could issue bonds that were not a debt of the state.); Fisher v. Steele, 39 La. Ann. 447, 1 So. 882 (1887). There are no cases that have reached similar conclusions in the past several decades.